COCKEY,
BRENNAN &
MALONEY, P.C.

ATTORNEYS &
COUNSELORS AT LAW

313 LEMMON HILL LANE
SALISBURY, MD 21801
410.546.1750
FAX: 410.546.1811

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND (NORTHERN DIVISION)

PATRICE WOLFE                                           *

       Plaintiff                                *

v.                                                                      Civil Action No. L02 CV-3965

                                   *

MED-TEL INTERNATIONAL CORPORATION

                                  *

       Defendant

                                  *

*   *   *   *   *   *   *   *   *   *   *   *

**AFFIDAVIT OF PATRICE WOLFE**

1. My name is Patrice Wolfe, I am more than 18 years of age, I am personally familiar with the facts stated in this Affidavit, and I am competent to be a witness to them.

2. After Chris Sullivan "blew the whistle" on Mr. Barnes, Mr. Green's sexually harassing conduct – use of a pornographic computer screen saver, and office discussion of pornographic email jokes – continued.  The only change in this sort of behavior on his part which I observed was that, because he refused to speak to me (or at length to others in my presence), I no longer over heard him making sexually explicit comments about women and their anatomy.

3. However, as I have detailed in my deposition and in my EEOC affidavit, Mr. Green – who was my supervisor – refused to communicate with me, pursuant to his assertion that he would "never forgive me" and therefore would "never speak to me again."  This was extremely awkward and problematic in the workplace, because I had many professional occasions upon which it was necessary for me to communicate effectively with Mr. Green.  His engrained, obstructive behavior in

COCKEY,
BRENNAN &
MALONEY, P.C.

ATTORNEYS &
COUNSELORS AT LAW

313 LEMMON HILL LANE
SALISBURY, MD 21801
410.546.1750
FAX: 410.546.1811

this regard fortunately never resulted in a patient being put at risk, but made it needlessly difficult for me (and others working with me) to do the job that needed to be done.

4. After Dave Parker became the Regional Chief Technologist, although Mr. Parker was pleasant and professional in his dealings with me, Mr. Green (with whom I still had frequent occasion to interact) continued to give me the "cold shoulder," and made his distaste for me explicit. Throughout the entire period following the Barnes incident, and until my discharge, Mr. Green frequently indulged in patronizing, deprecating comments about my job performance and my activities in the workplace. There are many examples of this, but the one that sticks out most in my mind is an occasion where I was demonstrating TMJ exams to a group of technologists, (including Amy Lenderking), and he came along and made fun of my lecture; this would have been in approximately March of 2002.

5. Immediately after the Christmas incident with Mr. Coleman, described in my EEOC affidavit and my deposition, the atmosphere at the Salisbury site became quite peculiar, in that my co-workers made known the fact that they had seen Mr. Coleman take me to the bar for a drink and devote a significant amount of his time to me following the Christmas business meeting. It was not long, however, before the atmosphere in the office turned "chillier" than ever, which I attributed to the fact that my chances of advancement had been impaired by my having rebuffed Mr. Coleman's advances.

COCKEY,
BRENNAN &
MALONEY, P.C.

ATTORNEYS &
COUNSELORS AT LAW

313 LEMMON HILL LANE
SALISBURY, MD 21801
410.546.1750
FAX: 410.546.1811

6. Had I gotten the promotion to Chief Regional Technologist, I would have had to work closely with Mike Green. Since it was common knowledge that Mr. Green refused to communicate with me under any circumstances, for any reason, no one was surprised when I failed to get the job. Although Mr. Green made it know he was staying out of the process due to his hostility toward me, I know that, on the one hand, he barely acknowledged receipt of my application for the promotion, whereas, when Mr. Parker applied, Mr. Green spent more than an hour closeted in the office with Mr. Parker, presumably discussing the application process.

7. The Company practice with regard to personnel decisions called for Mr. Coleman's personal involvement, at least in "blessing" the decision. When I was hired, for example, before the decision was finalized I had to meet with Mr. Coleman personally, even though I was being hired as an entry level MRI Technician in Toledo, Ohio, an outpost of the Med-Tel "empire." After I was denied the Chief regional technologist position, Mr. Coleman told me it was because I had "less job knowledge" then Mr. Parker. Immediately after I was fired, Med-Tel co-workers informed me that Mr. Coleman had called and spoken to Mr. Green, presumably about my termination.

I DO SOLEMNLY DECLARE AND AFFIRM under the penalties of perjury and of personal knowledge the facts stated in this affidavit are true and correct.

_____  _____
WITNESS                     PATRICE WOLFE

5.14.04
DATE

s:\staff\rcockey\active\wolfe\Affidavit of Patrice Wolfe-Memo    lc    05/14/04