IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(NORTHERN DIVISION)

| | |
|---|---|
| PATRICE WOLFE, | * |
|     Plaintiff, | * |
| v. | *   Civil Court Action No: L02 CV-3965 |
| MED-TEL INTERNATIONAL CORPORATION, | * |
|     Defendant. | * |

\* \* \* \* \* \* \* \* \* \* \*

**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant, Med-Tel International Corporation (hereafter, "Med-Tel"), has moved for summary judgment with respect to Plaintiff Patrice Wolfe's claims of sexual harassment and retaliation under Title VII of the Civil Rights Act of 1964. Defendant's Motion and supporting Affidavit, Exhibits and Memorandum pointed out that Wolfe's claims of hostile environment sexual harassment were time-barred and that there was no evidence from which a reasonable fact-finder could conclude that the termination of Wolfe's employment in May 2002 -- the single act that occurred within the limitations period applicable to Wolfe's claims – was motivated by retaliation for her participation in the much earlier sexual harassment investigation.

Wolfe has filed an Opposition to Med-Tel's Motion. She argues that the hostile environment sexual harassment claim is a "continuing violation" and that the record contains evidence of retaliatory motive for the termination. This Memorandum is submitted in reply to Wolfe's Opposition and in further support of Med-Tel's motion for

summary judgment, and shows below that Wolfe's assertions are legally incorrect and are not supported by admissible evidence in the record.

A. **NEITHER THE LAW NOR RECORD EVIDENCE SUPPORT WOLFE'S CLAIM OF A "CONTINUING VIOLATION" HOSTILE ENVIRONMENT CLAIM**

Med-Tel pointed out, in its Motion for Summary Judgment and supporting papers that the only act that occurred within the limitations period applicable to Wolfe's Title VII claim was the termination of her employment. The applicable timeline was as follows:

| | |
|---|---|
| June 19, 2002 | Wolfe files administrative charge of discrimination with the EEOC |
| May 7, 2002 | Med-Tel terminates Wolfe's employment |
| September 22, 2001 | 300th day prior to filing administrative charge |
| January 2001 | Parker is selected, rather than Wolfe, for the Regional Chief Technologist position |
| "sometime during the September 2000 to January 2001 time frame" | Wolfe's purported conversation with Naser regarding Greene not speaking to her (Wolfe 106-07) |
| December 2000 | Wolfe's interaction with Coleman |
| "late November or early December 2000" | Wolfe's purported conversation with Greene regarding his not speaking to her (Wolfe 107-08) |
| October 2000 | Barnes is terminated based upon sexual harassment investigation |

Under Title VII, claims based on incidents that are alleged to constitute an adverse employment action that occur more than 300 days prior to the filing of a charge with the EEOC are time-barred. 42 U.S.C. § 2000e-5 (e)(1); *AMTRAK v. Morgan,* 536 U.S. 101, 109-13 (2002); *see* Memorandum in Support of Med-Tel's Motion for

Summary Judgment (hereafter, "Med-Tel's Memorandum") at 12-13. The incidents of sexual harassment of which Wolfe complains – the Barnes situation and the interaction with Coleman and the promotion she claims she was discriminatorily denied -- took place more than 9 months prior to the limitations period.

In an attempt to avoid summary judgment on what is an obviously time-barred claim, Wolfe makes two assertions:  a new claim that Greene continued to engage in sexually harassing conduct after the Barnes termination and a claim that Greene refused to speak with her and ostracized her after the Barnes termination.  The first claim fails because it obvious it has been created for the sole purpose of avoiding summary judgment and is not supported by any admissible evidence.  The second fails because it likewise is not supported by admissible evidence and because, even if supported, it would not establish a hostile environment or a continuing course of conduct.

The basis for much of Wolfe's argument with respect to the continuing violation hostile environment claim is a new affidavit she supplied with her Opposition.  That affidavit must be disregarded in its entirety, because it does not comply with the requirements of the Federal Rules of Civil Procedure.

The Federal Rules of Civil Procedure provide that a sworn declaration must be based on the personal knowledge of the declarant, must set forth facts that would be admissible in evidence and must show the competence of the declarant to testify to its contents. *See* Fed.R.Civ.P. 56(e). *See Bryan v. Lucent Techs.*, 307 F. Supp. 2d 726, 729 (D. Md. 2004), *citing*, *Settle v. Baltimore County,* 34 F. Supp. 2d 969, 977 (D. Md. 1999), *aff'd without op.,* 203 F.3d. 820 (4th Cir. 2000) (per curiam).   "While courts view the summary judgment record in the light most favorable to the nonmovant, courts 'do

not stretch this favorable presumption so far as to consider as evidence statements found only in inadmissible hearsay.' " *Bryan, supra*, 307 F. Supp. 2d at 729, *quoting Mays v. Rhodes,* 255 F.3d 644, 648 (8th Cir. 2001).

Wolfe's affidavit should be rejected in its entirety because it does not contain any information from which the Court could conclude that it is based upon Wolfe's first-hand knowledge. Her affidavit contains not the usual affirmation that the affiant has "personal knowledge" of the events set forth in the affidavit, but the ambiguous statement that Wolfe "is personally familiar with the facts stated." The text of the affidavit makes it impossible to determine whether Wolfe actually witnessed any of the "facts" she alleges and most of the allegations are conclusions, not facts, in any event.

Wolfe's affidavit must also be rejected because it appears to have been drafted primarily to contradict testimony that was earlier provided in her answers to written discovery and in her deposition but is now unfavorable to her current position. A party cannot create a genuine issue of fact by contradicting testimony previously given in deposition through an affidavit prepared to support her summary judgment motion. *Barwick v. Celotex Corp.*, 736 F.2d 946, 960 (4th Cir. 1984). A genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflicting versions of the plaintiff's testimony is correct. *Id., citing Radobenko v. Automated Equipment Co.*, 520 F.2d 540, 544 (9th Cir. 1975). "If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." Id., *quoting Perma Research and Development Co. v. Singer*, 410 F.2d 572, 578 (2d Cir. 1969).

The entire content of Wolfe's affidavit should be rejected.  It is conclusory;  it does not set forth facts of which the plaintiff has personal knowledge;  it does not give specific facts, but only generalities;  and it contradicts sworn testimony Wolfe provided at her deposition.

This is illustrated by Wolfe's first attempt to invoke the continuing violation theory – her assertion that Greene engaged in sexually harassing conduct after Barnes' employment was terminated in October 2000.  Wolfe asserts in the first time in her Opposition that, "After Mr. Barnes' termination, Mr. Greene's sexually harassing behavior continued in part, at least to the extent of maintaining the obscene screen saver, [sic] and in-office discussion of pornographic jokes."  Opposition at p.3.  In support, Wolfe cites only the affidavit she provided with her Opposition, in which she states conclusorily that "Mr. Green's [sic] sexually harassing conduct – use of a pornographic screen saver, and his office discussion of pornographic email jokes – continued."  Wolfe Affidavit at ¶2.  Wolfe's affidavit testimony on this point is wholly conclusory;  it provides no indication of the dates that any of these alleged actions occurred, let alone any description of specifics.

With respect to these assertions of continuing sexually oriented conduct by Greene, one can only conclude that Wolfe did not witness the conduct, because she goes on to allege in her Opposition that "Mr. Greene's sexual banter – on [sic] at least Ms. Wolfe's exposure to it – did significantly improve, however, if for no other reason than because Mr. Greene completely stopped talking to Ms. Wolfe or at any length to others in her presence."  Opposition at p.3.  Wolfe does not explain the source of the information in the preceding paragraph.  It is clearly not admissible.

Moreover, Wolfe's affidavit assertions regarding this conduct are wholly inconsistent with her own prior testimony. The conduct is not mentioned in her complaint or in her answer to Med-Tel's interrogatory directing her to identify "each and every action that you believe contributed to the hostile work environment you allege." Defendant's Ex. 3 at Interrogatory No. 2.

Wolfe's current affidavit is also contradicted by her deposition testimony. In the deposition, Wolfe first raised an allegation that Greene had "semi-pornographic jokes" on his computer and "would play them for everyone." Wolfe 86. Wolfe testified that this conduct stopped after Barnes was forced to resign:

> Q: …When was the last time you saw a pornographic joke on Mr. Greene's computer?
>
> A: Well, probably after Mike Barnes was terminated slash resigned, Mike Greene didn't talk to me after that, so it would have been September of 2000 or October of 2000.

Wolfe 88. Wolfe's testimony of her conversation with Greene regarding him not talking to her also contains no reference to any discussion with him regarding continued sexual harassment. Wolfe 107-08. Wolfe's testimony also rules out any belated assertion that she discussed this alleged continued sexual harassment with company officials. Wolfe 106-09, 111-12. Both Parker and Marshall testified that they had never observed Greene engage in sexually harassing behavior. Marshall 10-11; Parker 32.

Wolfe's current "testimony" regarding continuing sexual harassment by Greene is clearly inadmissible and insufficient to establish a claim of continuing violation. It is clear that the last act of sexual harassment is alleged to have occurred in December 2000, in Wolfe's interaction with Coleman – 10 months before the applicable limitations period. Thus, it is beyond dispute that any claim of hostile environment sexual harassment is time barred.

Wolfe's next attempt to invoke the "continuing violation" theory is to attempt to portray unrelated slights into one melded "hostile environment," regardless of the actor or the alleged motivation for the action.  This ignores the requirement that the "continuing violation" must be a continued orchestration of the same type of discrimination, and not just a group of acts that occurred at the place of employment.

While harassment claims can be "continuing violations" that may permit a plaintiff to rely on otherwise time-barred acts and omissions to support her claim, *AMTRAK, supra,* 536 U.S. at 115-18, even under the 'continuing violation" doctrine, any incidents that occur prior to the limitations period are non-cognizable unless plaintiff can show that they are related to an incident within the limitations period as one or more in a series of separate but related acts amounting to a unitary violation. *Id.* at 115-18, 120 ("A court's task is to determine whether the acts about which an employee complains are part of the same actionable hostile work environment practice, and if so, whether any act falls within the statutory time period.");  *see Bryan v. Lucent Techs*., 307 F. Supp. 2d 726, 734 (D. Md. 2004). A hostile work environment claim will be time barred unless all acts which constitute the claim are "part of the same unlawful employment practice." *Id.*

Acts that are not part of the same "unlawful employment practice" are not continuing violations.  See, *Bryan, supra*, 307 F. Supp. 2d at 736-37, where the harassing behavior engaged in by one employee and a later transfer and resignation were found not to be "substantially related" and thus not a continuing violation. *Also see McGinest v. GTE Serv. Corp.,* 360 F.3d 1103 (9th Cir. December 2, 2002)("The Supreme Court has

not yet given us specific guidance on the precise contours of a sufficient relation, so, for now, this is our job. Perhaps evidence of adequate relation might consist of the following: an identity of offenders, an identity of location, an identity of a sufficiently distinct mode of harassment, or a reasonable identity of time in relation to the applicable statute of limitations.").

Here, Wolfe makes two different claims – one that she was sexually harassed and one that she was retaliated against because she participated in the investigation that led to the termination of the harasser's employment. Wolfe's essential argument is that Greene was angry at her because he perceived that she brought about the termination of his friend Barnes and that he refused to speak with her thereafter. This is not the same type of conduct as Barnes engaged in or as Coleman was alleged to have engaged in. There is no continuing sexual harassment violation.

In an attempt to create a claim of a continuing violation of a retaliatory hostile environment, Wolfe now claims that Greene "ostracized" her and that this "was problematic, not only because it made it difficult for Ms. Wolfe to do her job, but because it affected the conduct of co-workers towards her, who make it clear that they perceived her as a pariah, someone who could never advance in the company ranks." Opposition at p.3.

This dramatization is not supported by the evidence. The infirmities of Wolfe's belated affidavit have been discussed *supra*. Even in the belated affidavit, Wolfe never identified a single co-worker who perceived her as a "pariah" or any co-worker who had a negative opinion of her and who was in any position to affect her employment in any

-8-

way. Wolfe did not identify any incident where she was hindered in performing her job, particularly at any point during the applicable limitations period.

There is no evidence that Wolfe was in fact hindered from performing her job. Parker was her direct supervisor during the period from January 2001 on, and she does not describe any problems with him. Her August 2001 performance evaluation (Wolfe Ex. 9), completed by Parker, contains no indication of problems that could be attributable to Greene's alleged "ostracization." Wolfe describes the evaluation as "almost perfect." Opposition at pp. 10-11. Wolfe described her relationship with Parker as friendly and appropriate:

> Q: What was your relationship with Mr. Parker like?
> A: Friendly.
> Q: Did he ever engage in any conduct that you perceived to be sexual harassment?
> A: No, never.
> Q: Did he ever engage in any conduct that you observed to be inappropriate in any way?
> A: No.

Wolfe 180. Wolfe confirms in her opposition that Parker was pleasant and professional in his dealings with her. Wolfe Affidavit at ¶4.

Wolfe's testimony regarding her relationship with her supervisor demonstrates that, whatever deterioration of interpersonal relationship between her and Greene that followed the Barnes investigation, it was minor and would not constitute a hostile work environment. As Med-Tel pointed out in its Memorandum, an action must constitute an adverse employment action, *i.e.*, one that results in an adverse effect on the "terms, conditions, or benefits" of the plaintiff's employment, in order to constitute actionable

retaliation. Med-Tel's Memorandum at pp. 21-22. A supervisor's treatment of an employee rudely and uncivilly does not amount to an adverse employment action. *Id*.

Retaliatory harassment (*i.e.*, a claim of retaliatory hostile environment) can constitute adverse employment action only if such harassment adversely affects the "terms, conditions, or benefits of the plaintiff's employment." *Von Gunten v. Maryland,* 243 F.3d 858, 869-70 (4th Cir. 2001). For a hostile work environment claim to lie, there must be evidence of conduct severe or pervasive enough to create "an environment that a reasonable person would find hostile or abusive." *Id.*, *citing Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367 (1993). A plaintiff's burden of proof in this regard is twofold: she must show that her workplace was both subjectively and objectively hostile. *Id.* Wolfe has not done so.

Wolfe's present allegations regarding the difficulties with Greene appear to have been fabricated to support her current opposition. Wolfe asserts that "When it was necessary for Mr. Greene to communicate with Ms. Wolfe, he would do so through Christine Byrd …, another technologist with whom Mr. Greene was having an affair." Opposition at p.3. While various witnesses testified that Greene and Byrd had an affair, Wolfe's assertion that Greene used Byrd as a communications conduit is created of whole cloth – there is no mention of it in any of the sources cited, even in Wolfe's belated affidavit. Similarly fictional is Wolfe's assertion that "Mr. Greene's utilization of his girlfriend as a favored communicant lead to office friction between Ms. Byrd, Ms. Wolfe and other technologists."[1] The source cited, the Marshall deposition, does not mention that Greene used Byrd as a communication conduit, and Marshall indicated that the

---

[1]   Opposition at p. 3.

-10-

friction was based upon Byrd's coming in late and leaving as she pleased and that Wolfe confronted her regarding this. Marshall at 15-16. Wolfe testified that she was friendly with Byrd until the date she left Med-Tel:

> Q: Were you friendly with Ms. Byrd at one point?
>
> A: Yes.
>
> Q: And when was that?
>
> A: We would laugh and joke up until the day that I got terminated.

Wolfe 59.

Finally Wolfe asserts that Greene continued to snub her after Parker was promoted and "frequently indulged in patronizing, deprecating comments about my job performance and my activities in the workplace." Wolfe Affidavit at ¶4. Here, she mentions one incident which she asserts occurred in March of 2002. This incident was, of course, not mentioned in the complaint, in Wolfe's answers to interrogatories, or at her deposition.

It is clear that, at best, Wolfe has alleged that she and Greene were friends before Greene's friend Barnes was forced to resign[2] and that, after the investigation and resignation, she and Greene were no longer friendly. There is no evidence in the record from which a reasonable fact-finder could conclude that this change in personal relationship affected a term or condition of Wolfe's employment or created a work environment that was objectively and subjectively hostile. Med-Tel is entitled to summary judgment with respect to Wolfe's allegations of hostile work environment.

---

[2] *See, e.g.,* Wolfe 104-05, where Wolfe describes that she had a social relationship with Greene prior to the sexual harassment investigation and that she had entertained Greene and his spouse at her house in May or June of 2000.

B.   **WOLFE HAS NOT PRODUCED ANY ADMISSIBLE EVIDENCE TO SUPPORT HER CLAIM OF RETALIATORY TERMINATION**

With expected dramatic flair, Wolfe's Opposition describes her position with respect to her termination as "Mr. Greene was her *eminence grise,* her nemesis…". Opposition at p. 21. In this case, her description in the Opposition is at least consistent with her view, expressed at the deposition, that Greene was exercising behind-the-scenes power to force her termination. Unfortunately, Wolfe presents nothing but personal belief that this is the case to support her claim, and her personal belief is clearly insufficient to avoid summary judgment.

In *Celotex Corp.*, the Supreme Court stated:

> In cases like the instant one, where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the "pleadings, depositions, answers to interrogatories, and admissions on file." Such a motion, whether or not accompanied by affidavits, will be "made and supported as provided in this rule," and Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial."

*Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A " 'mere scintilla of evidence is not enough to create a fact issue.'" *Barwick v. Celotex Corp.*, 736 F.2d 946, 958-59 (4th Cir. 1984), *quoting Seago v. North Carolina Theaters, Inc.*, 42 F.R.D. 627, 632 (E.D.N.C. 1966), *aff'd*, 388 F.2d 987 (4th Cir. 1967).

There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (citations omitted). In this case, Wolfe has failed to produce

admissible evidence to support her theory; instead she has presented unsubstantiated opinion and innuendo.

Under *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 807, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973), the plaintiff must first demonstrate a prima facie case of retaliation. In general terms, a plaintiff establishes a prima facie case by proving a set of facts which would enable the fact-finder to conclude in the absence of any further explanation, that it is more likely than not that the adverse employment action was the product of discrimination. *Von Gunten v. Maryland,* 243 F.3d 858, 863 n.1 (4th Cir. 2001) (noting that the same standard for an adverse employment action should be used for both retaliation claims and for disparate treatment discrimination claims).

Once the plaintiff establishes a prima facie case, a presumption of discrimination arises and the burden of production is placed on the employer to articulate a legitimate nondiscriminatory (or non-retaliatory) reason for the adverse employment action. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 507, 125 L. Ed. 2d 407, 113 S. Ct. 2742 (1993) (citing *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 254, 67 L. Ed. 2d 207, 101 S. Ct. 1089 (1981)). Because the employer's burden is one of production and not of persuasion, it "is not required to prove absence of a discriminatory motive, but merely articulate some legitimate reason for its action." *EEOC v. Clay Printing Co.,* 955 F.2d 936, 941 (4th Cir. 1992) (internal quotation marks omitted) (quoting *EEOC. v. Western Electric Co., Inc.,* 713 F.2d 1011, 1014 (4th Cir. 1983)). If the employer meets this burden, the presumption of discrimination (or retaliation) is eliminated, and the plaintiff bears the ultimate burden of generating a dispute of material facts as to whether the employer's nondiscriminatory (or non-retaliatory) reasons are pretextual, and whether

the adverse employment action was actually taken because of the employee's protected status or in reprisal. *Hicks,* 509 U.S. at 511; *Munday v. Waste Mgmt. of N. America, Inc.,* 126 F.3d 239, 242 (4th Cir. 1997).

The Supreme Court clarified the plaintiff's burden at the pretext stage in *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 147, 147 L. Ed. 2d 105, 120 S. Ct. 2097 (2000). The Court reiterated that evidence of pretext, combined with the plaintiff's prima facie case, does not compel judgment for the plaintiff, because "it is not enough ... to disbelieve the employer; the factfinder must [also] believe the plaintiff's explanation of intentional discrimination." *Reeves,* 530 U.S. at 147 (quoting *Hicks,* 509 U.S. at 519); *see Bryan, supra,* 307 F. Supp. 2d at 737-38.

Here, there is no dispute that Med-Tel articulated legitimate non-discriminatory reasons for Wolfe's termination – her friction with co-workers, including but not limited to Lenderking, and her continued abuse of Med-Tel's telephone system. Med-Tel's Memorandum at 8-11, 16. It is Wolfe's obligation to produce sufficient admissible and specific factual evidence to permit a fact-finder to conclude that these reasons are not true and are a pretext to disclose a retaliatory motive.

Wolfe asserts that "It is undisputed that Mr. Greene was personally involved in the promotional process that resulted in Ms. Wolfe's failure to get a promotion, in the telephone investigation that ostensibly lead [sic] to her termination, and in the decision making process with regard to the termination herself; one of the three employee statements produced to justify Ms. Wolfe's termination was signed by Mr. Greene's

girlfriend, Ms. Byrd."[3]  Wolfe's assertions are absurd, as is the extent of her reliance on her conspiracy theory.  The first assertion is incorrect – the record is undisputed that Greene had nothing to do with the promotion except to receive the applicants' expressions of interest in the position and to pass them on to the selection committee.  The second assertion is also not supported by the record – the investigation into the telephone calls was made by Mr. Lott, without involvement by Greene – and twisted.  Greene became involved only when Lott had identified Wolfe as a most flagrant offender and informed Greene, who in turn informed Lott that Wolfe had earlier been cautioned about such behavior.  Wolfe conceded that she had indeed been cautioned about her telephone abuse.

Greene's role was similarly limited with respect to the termination.  Parker identified the offensive behavior with co-workers, then reported it to Greene.  The co-workers themselves provided statements documenting their difficulty working with Wolfe.  Med-Tel Ex. 17, 19-21.  It is beyond dispute that all of the co-workers describe situations where they found it unpleasant to work with Wolfe.  Wolfe presented no evidence to suggest that the statements the co-workers provided were not truthful and were procured by nefarious means.  She also presented no evidence to suggest that Byrd's statement was a product of the evil machinations of Greene.

Wolfe asserts that Med-Tel gave a false reason for Wolfe's termination during unemployment proceedings.  This "evidence" is multiple hearsay – it is a third party's

---

[3]  Wolfe also describes Wolfe's encounter with Coleman as a "sinister twist," but given the clear record evidence that Coleman had nothing to do with any of the employment decisions related to Wolfe, it is not worth discussing here, other than to note the degree of license Wolfe has taken with record in this case and with reality.

statement, not under oath, regarding a statement that was purportedly made by some unidentified representative of Med-Tel.  That reason was not advanced as a "legitimate non-discriminatory reason" in this case.

Wolfe also asserts that one of the three reasons written on Med-Tel's termination notice – Wolfe's failure to repay Med-Tel for the loan advance when she moved to Maryland – was also false.  This assertion is not supported by the record.  It is Wolfe's obligation to prove that the statement is false.  Lott testified without contradiction that he was informed by the Company comptroller that Wolfe did not comply with the terms set forth in the loan document (see Med-Tel Ex. 28).  Wolfe has presented no evidence that she did make repayment as specified or that the Comptroller was pawn of Greene.

Finally, Wolfe asserts that the "telephone abuse" identified by Med-Tel was a pretext for discrimination.   Wolfe's discussion on this point demonstrates the degree to which she misapprehends her burden at the pretext stage.  Wolfe admits that she did engage in many lengthy telephone calls with her paramour in Ohio during working hours and that these calls continued until the day before she was terminated by Med-Tel.  She conceded that she was warned about this behavior and was told that it should stop.  She points to Med-Tel's rejection of her offer, on the occasion of this earlier warning, to repay the long distance bill as evidence that Med-Tel was not concerned about the conduct.  She obviously cannot fathom that Med-Tel was even more concerned by the fact that she was spending time she was supposed to be engaged in her duties scanning

patients[4] speaking to her paramour than it was with the cost of the telephone calls.

Further, Wolfe failed to present specific factual evidence that other employees who were similarly situated were treated differently. She testified regarding her general opinion that other employees also made personal telephone calls; she presented no evidence that they made calls that were as long as or as frequent as the calls made by her paramour to her. Wolfe also presented no evidence that any of the other employees had been previously warned about telephone abuse, as she had been.

Mr. Lott testified that he reviewed the telephone bill for the period immediately following the meeting when the subject of telephone abuse was mentioned. See Lott Affidavit. He compiled a list of lengthy telephone calls and researched the sources of the calls to rule out legitimate business calls. In so doing, he discovered that Wolfe had received more than 7 hours of calls within a single month from a single number – a number he identified as that of her paramour in Ohio. Wolfe has presented no evidence that any other employee engaged in this degree of abuse. It is her obligation to do so, and this obligation is not satisfied by her offering generalized opinions regarding the activities of other employees.

Plaintiff has failed to produce sufficient specific admissible evidence to demonstrate that the reasons advanced by Med-Tel for her termination are false and a pretext for discrimination. Med-Tel is entitled to summary judgment with respect to her claim that she was terminated in retaliation for engaging in protected activity.

---

[4]    Wolfe testified that the MRI Technologist's full attention should be on the patient and on monitoring the quality of the scan or on other duties. Wolfe 188-89.

## CONCLUSION

For the reasons set forth in above and in Med-Tel's Motion for Summary Judgment and supporting exhibits, affidavit and memorandum, Med-Tel requests that its motion for summary judgment be granted, that judgment be entered in its favor, and that it be granted its costs, including attorneys' fees, incurred in defending this suit.

Respectfully submitted,

/s/_____
Jeanne M. Phelan

WHITEFORD, TAYLOR & PRESTON L.L.P.
Seven Saint Paul Street, #1300
Baltimore, Maryland 21202-1626
(410) 347-8738

Attorneys for Defendant Med-Tel
International Corporation